STATE, RESPONDENT, *v.* CARRINGTON, APPELLANT.

1. *Constitutional Law—Murder — Indictment — Number of Grand Jurors.*

Section 13, art. 1, Const. of Utah, which provides that the offenses formerly prosecuted by indictment shall, under the state government, be prosecuted by information or by indictment found by a grand jury of seven, five of whom must concur therein, is not *ex post facto*, and is not in conflict with the constitution of the United States. Nor is section 10 of the same article *ex post facto* or in conflict with the constitution of the United States. *State* v. *Bates*, 14 Utah 293, reaffirmed.

2. *Murder—Abortion—Indictment—Duplicity of.*

Where an indictment for murder contains allegations concerning an abortion and miscarriage and the instruments and drugs used to produce the miscarriage, which merely show the manner of and the means used in perpetrating the offense, it is not bad for duplicity.

3. *Change of Venue—Discretion.*

Where a trial court has jurisdiction of a cause, the matter of a change of venue is within its sound discretion, subject to review and reversal only for an abuse of the discretion.

4. *Murder—Prosecution for—Letter of Defendant—Admissibility.*
   Under an indictment for murder, C., at the trial, offered in evidence a letter which he had written to his wife on the eve of and explaining his intended departure from the state, after he had been informed of the death of the person whom he was accused of having killed. The letter was written at a time when C. was considerably disturbed in mind, and the record failed to show that he could have had no self-serving purpose in writing it. *Held*, that the letter was not admissible to rebut testimony tending to show that the writer attempted to flee from justice.

5. *Dying Declarations.*
   Where declarations have been made *in extremis*, and committed to writing,.the mere fact that the writing was not signed by the deceased, who at the time was conscious and mentally capable, but physically unable to sign it, does not render the writing inadmissible.

6. *Same—Oral and Written—Admissibility of.*
   Where oral declarations have been made *in extremis*, and were afterwards committed to writing, and assented to by deceased, as being correct, both the oral and written declarations are admissible in evidence, so far as otherwise competent, at a trial where the death of the deceased is the subject of the charge, and the circumstances of the death the subject of the dying declarations.

7. *Same—Matters of Opinion.*
   The same rules apply respecting the admissibility of statements contained in dying declarations as apply to the statements of witnesses sworn in a cause, respecting admissibility of evidence. Nothing can be evidence in such declarations that would not be so if the deceased were living and sworn as a witness.

(No. 825.  Decided Oct. 9, 1897.)

Appeal from the First district court, Box Elder county. C. H. Hart, *Judge.*

J. B. Carrington was convicted of murder in the second degree, and appeals. *Reversed.*

*Moyle, Zane & Costigan,* for appellant.

It is apparent that if the dying statement in writing

15 UTAH—31

.was admissible the oral statements were not admissible. If it was committed to writing it is essential to produce the writing, which is the best evidence. Greenleaf on Evidence (14th Ed.) 161; *Rex* v. *Gay*, 7 C. and P. 230; *Rex* v. *Reason*, 1 Strange 499; *Boulden* v. *State*, 15 So. Rep. 341.

When not signed it seems not to be evidence although it is even sworn to. *State* v. *Whiston*, 16 S. E. Rep. 332; *Darby* v. *State*, 9 So. Rep. 429; *Shaw* v. *People*, 3 Hun 272; *State* v. *Williams*, 67 N. Car. 12; *Reynolds* v. *State*, 68 Ala. 502; *Collins* v. *Comm.*, 12 Bush 271; *Warren* v. *State*, 9 Tex. App. 619; *Matherly* v. *Comm.*, 19 S. W. Rep. 977; *State* v. *Elkins* (Mo.) 14 S. W. 116; 69 Iowa 705; *People* v. *Lanigan*, 81 Cal. 142.

The letter states his reasons for going. It is a declaration made at the time an act is done explaining and characterizing the act, and was therefore admissible. *U. S.* v. *Penn*, 27 Fed. Cas. 490; *Ins. Co.* v. *Hillman*, 145 U. S. 285; 4 Tex. App. 5; 3 Tex. App. 91; note found at 95 Am. Dec. 68; *Comm.* v. *Trefethan*, 24 L. R. A. 235; *Tait* v. *Hall*, 71 Cal. 149; *Ry. Co.* v. *Herrick*, 49 Ohio St. 25.

BARTCH, J.:

The defendant in this case was indicted for murder, and was tried for and convicted of murder in the second degree, the higher offense being waived by the prosecution at the commencement of the trial. Counsel for the prisoner objects at the outset to the indictment, because it was found by a grand jury of seven members, as provided in section 13, art. 1, Const. Utah, and claims that the law authorizing such a jury was *ex post facto* as to this case, because the alleged offense was committed before the constitution went into effect. The provision referred to provides that the offenses formerly prosecuted by indictment shall, under the state government, be

prosecuted by information or by indictment found by a grand jury of seven, five of whom must concur therein; but it does not make an act, which was innocent when done, criminal; nor does it aggravate the crime by making it greater than when committed, or provide for or inflict a greater punishment; nor does it change the legal rules of evidence, so as to require less or different evidence to convict. The law in question simply changes the mode of procedure, and does not affect the substantial rights of the prisoner. It is therefore not *ex post facto*, and is not in conflict with the constitution of the United States. An extended discussion of this question is not deemed necessary in this case, because a similar and closely connected question was before us in the case of *State* v. *Bates*, 14 Utah 293, where the objection was that the prisoner could not be tried by a jury of eight men; and it was contended that section 10 of the same article was an *ex post facto* law, and in conflict with the constitution of the United States. We held section 10 valid, and the same principles which were applied in that case to the question respecting section 10 apply substantially to the objection here under consideration. We have no disposition to depart from the ruling in that case, notwithstanding that the same question there discussed is again raised in this. We are of the opinion that section 13 is valid, and that its provisions apply to the case at bar, and reaffirm our former ruling as to section 10. These sections do not appear to be in conflict with the constitution of the United States, but to be within the proper exercise of the constitutional power of a state. Nor do our views on this point conflict with the decision of the supreme court of the United States in the case of *Kring* v. *Missouri*, 107 U. S. 221. That case turned on the point, in the opinion of a majority of

the court, that the change in the law of Missouri changed the rule of evidence. *Hurtado* v. *California*, 110 U. S. 516.

Nor do we think the indictment is bad for duplicity. The charge is murder, and the allegations concerning the abortion and miscarriage, as well as those respecting the instruments and drugs used and administered to procure the miscarriage, are statements showing the means used in the perpetration of the offense, and do not constitute a separate and distinct charge. *Com.* v. *Brown*, 14 Gray 419.

Nor can we say that the court erred in refusing to grant the motion for a change of venue, under the circumstances disclosed by the record, there being no question as to the jurisdiction of the court to try the cause. The matter of a change of venue in any case where the court has jurisdiction is within the sound discretion of the trial court, subject to review and reversal only for an abuse of the discretion. It is a judicial discretion, and should be exercised only for good cause shown. The action of the court in the case at bar was based on affidavits for and against the change of venue, and it does not appear from the record that the motion was improperly denied. The ruling in this regard must be upheld. *People* v. *Goldenson*, 76 Cal. 328; *State* v. *Russell* (Mont.) 32 Pac. 854; *Territory* v. *Manton*, 8 Mont. 95; *Power* v. *People* (Colo. Sup.) 28 Pac. 1121.

It is insisted for the defendant that the court erred in refusing to admit in evidence a certain letter written by the defendant to his wife on the eve of his attempted departure from the state, in which, among other things, he assigned reasons for his intended departure, and also stated his intention to return. The prosecution had introduced evidence tending to show that the prisoner attempted to flee from justice, and the letter was offered to

rebut that testimony. It appears that, at the time of the writing of the letter, the defendant had already been informed of the death of the deceased, and that there was a charge of some kind against him, and it seems quite clear from the evidence that he was considerably disturbed in mind. This may also be gleaned from the letter itself, for therein he said: "I will stop at Salt Lake, and go and see those people, Mrs. Page, and see if there is anything in this story. I know it can't be true so far as I am concerned." The record fails to show that the defendant could have had no self-serving purpose or motive in writing the letter, but, on the contrary, his own evidence as well as the letter, indicates that, at the time of writing, he was subject to disturbing influences. The letter was therefore incompetent as evidence, and was properly rejected. *Silva* v. *Pickard,* 10 Utah 78.

The next assignment of error which we will consider is that relating to the introduction of proof of the dying declarations of the deceased. It is insisted for the prisoner that, at the time the declarations were made, the deceased did not realize that death was impending. The evidence does not warrant this contention, for it clearly shows that the declarations were made in view of approaching death and dissolution. They were made on the day previous to her death, and, without referring to the evidence in detail, it is clear from a perusal thereof that she was fully conscious, and realized her dying condition.

The prosecution first offered parol proof, which was admitted, of the dying declarations, and afterwards a writing containing their substance, but which was not signed, in evidence. This was admitted over the objection of counsel for the prisoner, and it is now insisted that the court erred in admitting the unsigned dying statement. The declaration having been made *in extremis,* and com-

mitted to writing, the mere fact that the writing was not signed by the deceased did not render it inadmissible, it having been shown that, at the time the declarations were made, the deceased was conscious and mentally capable, but physically unable to sign it, and the statements contained therein having been declared by her to be correct and true. Whart. Cr. Ev. § 293; *People* v. *Callaghan*, 4 Utah 49.

The parol proof of the dying declarations was also objected to, and its admission assigned as error. The law is well settled that where, as in this case, the death of the deceased is the subject of the charge, and the circumstances of the death the subject of the dying declarations, the declarations are admissible; and where such declarations are made at different times, at one of which they have been reduced to writing, the prosecution is not confined to the written statement, but may offer oral evidence of those made at the other times, whether the several declarations were similar or not. In the case at bar the oral declarations were made in conversation with the witness, and afterwards the writing was drawn up and assented to by the deceased, as being correct. We are therefore of the opinion that both the oral and written declarations, so far as otherwise competent, were admissible, under the circumstances shown by the record. In *People* v. *Vernon*, 35 Cal. 49, the supreme court of California said: "The fact that a written memorandum of the statement, verified by deceased, was read in evidence, is no objection to the introduction of independent oral evidence of the same or similar dying declarations of the deceased." *Com.* v. *Haney*, 127 Mass. 455; *People* v. *Simpson*, 48 Mich. 474; 6 Am. & Eng. Enc. Law, 134; 1 Rosc. Cr. Ev. 55–57.

The most serious question presented is the one relating

to matters of opinion in the dying declarations. The portion of the written statement material here reads as follows: "Dr. J. B. Carrington performed an operation on me at Brigham City, Utah, on or about the 6th day of October, 1895, for the purpose of performing an abortion. This operation consisted of inserting an instrument into my womb on the date last mentioned, and placing some medicine in my womb, so I would miscarry." Counsel for the prisoner insists that the expressions "performed an operation," "for the purpose of performing an abortion," and "so I would miscarry," ought to have been excluded. The first one mentioned is simply a statement of a fact, and not an opinion. The fact whether Dr. Carrington performed an operation on the deceased was peculiarly within her knowledge. If it was a fact that an operation had been performed upon her, and she had been living and sworn as a witness, it would have been competent for her to make that statement; and whatever is competent in the testimony of a witness is competent in a declaration in *articulo mortis.* Whart. Cr. Ev. § 294; *Maine* v. *People,* 9 Hun 113.

As to the remaining two objectionable expressions, the position of counsel for the prisoner must be sustained. They were mere expressions of opinion, whereby the deceased declared what the purpose of Dr. Carrington was in performing the operation, and were clearly inadmissible. She could not state what his purpose was. The same rules apply respecting the admissibility of statements contained in dying declarations as apply to the statements of witnesses sworn in a cause, respecting admissibility of evidence. No witness can state with what purpose another person performed an act. What the purpose of an act was is an inference to be drawn from facts, and the witness may state the facts, but must leave it to

the jury to determine, from those facts, what the purpose was. Dying declarations, therefore, must state facts only, and not matters of opinion. "Nothing can be evidence in a declaration in *articulo mortis* that would not be so if the party were sworn. On this rule, anything the murdered person in *articulo mortis* says as to the facts is receivable, but not what he says as matters of opinion or belief." Whart. Cr. Ev. § 294; 6 Am. & Eng. Enc. Law, 126; *Montgomery* v. *State*, 80 Ind. 338. We are of the opinion that the expressions "for the purpose of performing an abortion" and "so I would miscarry" ought to have been excluded, and that their admission in evidence was prejudicial error.

There are numerous other questions raised in the record, but, upon examination, we perceive no other reversible error. The cause is reversed and remanded, with directions to grant a new trial.

MINER, J., and HILES, District Judge, concur.