[Crim. No. 12914. First Dist., Div. Four. Apr. 14, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
NELSON CLAUDE THOMAS, Defendant and Appellant.

**COUNSEL**

Lawrence Horn, under appointment by the Court of Appeal, and William W. Kaufmann for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg, and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHRISTIAN, J.**—Nelson Claude Thomas appeals from an order admitting him to probation after a jury found him guilty of grand theft in

the taking of property from the person of another (Pen. Code, § 487, subd. 2).

Appellant contends that the court erred in denying a motion for mistrial when it developed that, after the jury had been impaneled but before the taking of testimony began, four jurors read a newspaper story which had identified the case by name and related that a codefendant had pleaded guilty and been sentenced. The press story is set out below:

# Jury Picked For Purse Snatching

Jury selection in the case of Nelson Claude Thomas, 27, of Richmond, on trial for snatching an elderly woman's purse was completed yesterday, while the man's alleged partner has admitted the crime.

The trial of Thomas, will begin Monday in Marin Superior Court before Judge Charles Read Best. He is accused of armed robbery.

Another Richmond man, Larry Dobie Young, pleaded guilty in a plea bargain.

Best sentenced him to four months in jail and ordered him to enter a Veteran's Administration hospital thereafter for treatment for drug addiction.

San Rafael police said as the pair drove by an 87-year-old San Rafael woman on Fourth Street in September, one of them reached out and grabbed her purse, knocking her to the pavement.

They were arrested moments later on Highway 17.

When the article was brought to the court's attention, the jurors were questioned separately in chambers. Eight jurors had not seen the article, but four (Flowers, Erickson, Musetti and Garcia) had. All four had recognized that the article referred to the case which they had been sworn to try and remembered the statement that a codefendant had pleaded guilty.

Flowers acknowledged that, although she did not think she had been influenced, she might have some hesitancy "with the other one pleading guilty." But in response to the court's questions, she acknowledged that newspaper articles are not always correct and undertook to take the evidence "only as it comes through the witnesses during the course of this trial."

Erickson stated that she was "quite surprised because—well, the fact that we are trying a partner of a guy that admitted that he had already—you know that he was guilty." When asked whether she was able to presume appellant innocent, she responded, "I guess so, but when his partner has already admitted he's guilty, it's difficult." The court then pointed out that "Two or more people can be present at the scene of an offense and not necessarily [be] involved in it." Erickson acknowledged that she had not thought about that possibility and

responded affirmatively and without qualification to the court's inquiries whether she would form her judgment solely on the basis of the evidence received at trial.

Musetti declared that he still presumed appellant to be innocent, and undertook to render his decision only on the basis of trial evidence.

Garcia stated that the article would not affect her judgment and that she presumed appellant to be not guilty.

As the court recognized, the reading by several jurors of the newspaper article, which identified the case and related that a codefendant had pleaded guilty, seriously jeopardized the fairness of the trial. The motion for mistrial called for the court to weigh the danger of prejudice to the defense against the practicability of reducing or eliminating that danger by choosing a new jury; to grant a mistrial would have created no conflict with the constitutional guarantee against double jeopardy. (See Pen. Code, § 1141; 1 Witkin, Cal. Crimes, § 195, p. 187; cf. *Curry* v. *Superior Court* (1970) 2 Cal.3d 707 [87 Cal.Rptr. 361, 470 P.2d 345].)

Counsel have suggested analogies drawn from a number of cases which have expressed and applied the requirement that when there has been extensive pretrial publicity, a change of venue should be ordered if an independent review of the evidence by the Court of Appeal discloses a "reasonable likelihood" of unfairness. (See, e.g., *Maine* v. *Superior Court* (1968) 68 Cal.2d 375 [66 Cal.Rptr. 724, 438 P.2d 372]; *People* v. *Byers* (1970) 10 Cal.App.3d 410 [88 Cal.Rptr. 886].) Those decisions are not directly pertinent to the unusual circumstances presented in this record. On the other hand, the cases are also to be distinguished which prohibit resort to the testimony or affidavits of jurors to impeach a verdict. (See Witkin, Cal. Criminal Procedure, § 553, p. 564.) Our case is also to be distinguished from cases in which widespread notoriety has made it impossible to obtain a jury made up of persons who do not have some knowledge of the case.

It was not the trial court's responsibility, in ruling on the motion for mistrial, to attempt to obtain a perfect jury or to exclude any remote possibility of prejudice. However, the essence of judicial discretion in dealing with a misadventure of the character reflected in this record is to so manage matters as to control the danger of jury prejudice to the extent practicable. Although the likelihood of prejudicial effect upon the minds

of the few jurors who saw the article was obviously substantial, the fact that eight jurors had not seen the article at all indicates that there would have been no difficulty, if a mistrial had been granted, in selecting a new jury free of any improper influence. It is concluded that it was an abuse of discretion to deny the motion for mistrial.

Other contentions advanced by appellant need not be discussed.

The order is reversed.

Caldecott, P. J., and Emerson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.