The STATE of Utah, Plaintiff
and Respondent,

v.

Harry MAESTAS, Defendant
and Appellant.

No. 13751.

Supreme Court of Utah.

Feb. 7, 1977.

1.  *State v. Davie,* 121 Utah 184, 240 P.2d 265 (1952).

2.  *State v. Sullivan,* 6 Utah 2d 110, 307 P.2d 212 (1957).

D. Gilbert Athay, of Athay, Bown & Van Sciver, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HENRIOD, Chief Justice.

Appeal from a second-degree murder conviction. Affirmed.

Defendant urges: 1) That one of the jurors was disqualified since he had talked to his son-in-law, a local telecaster, on two occasions,—once a few months before trial at about the time the homicide was reported in the media, and once, after he had been sworn as a juror but before any evidence was adduced; 2) that evidence of previous crimes erroneously had been admitted; and 3) that a cumulation of erroneous rulings as to evidence offered or admitted, amounted in itself to reversible error.

Treating the points on appeal in reverse, we conclude and hold as follows:

■ As to 3): The exception taken appears to be without merit, since the point, in large measure, addresses itself to numerosity of the rulings, and not to specific errors of substance constituting prejudiciality.

1. 22 Utah 2d 257, 451 P.2d 772 (1969).

■ As to 2): The urgence here relates principally to testimony about a robbery committed a few days before the homicide in which the State claimed the victim was a knowledgeable witness, and whose testimony may have been damaging to defendant by way of identifying him as the robber,— thus pointing to a motive for the killing.

The rule cited by defendant in *State v. Lopez*,[1] is not objectionable, but seems to be of little significance under the facts of this case,—particularly where the factor of "intent" looms large. We think a case more apposite and dispositive to be *State v. Neal*.[2]

■ As to 1): The venireman whose qualification is questioned, voluntarily sought out the trial judge, with his son-in-law, and apprised him of the conversations. The first conversation appeared to have been one that thousands may have indulged in talking about the reported events of the day,—much as people do at the dinner table. The second was a cautionary dialogue in which the son-in-law suggested the possibility or consequence of the first conversation as a disqualification. The matter was presented to the judge, as stated above, and without reciting the questions and answers of the parties, the trial court concluded as follows:

THE COURT: The court is of the opinion that Mr. Carpenter responded to the questions of the court and counsel honestly and to the best of his recollection yesterday and that upon being examined today fairly and honestly disclosed the conversation he had with his son-in-law at his shop last night and disclosed that because of this conversation he did recall an earlier conversation with his son-in-law where the matter was discussed. I think it is clear that . . . Mr. Carpenter himself formed no opinion regarding the case; that he has no opinion at this time except an opinion that he can try the case fairly and on the evidence

2. 123 Utah 93, 254 P.2d 1053 (1953), pet. dn'd 1 Utah 2d 122, 262 P.2d 756; see also McCormick, Evidence, 2d Ed. sec. 190, p. 447.

introduced at the trial. He did answer yesterday that at the time of the offense he was aware of the matter being reported but that he had no opinions and no really present recollections of the occurrence. I think it's fair to assume that he gave at the time and now gives no greater weight to any statement the son-in-law may have made to him than he did to other news reports at the time. Based upon the findings the court denies the motion for mistrial.

We believe the trial court's determination to be one, under the facts here, that sustains a reasonable exercise of his discretion, as is his prerogative in such matters, as reflected in *Brown v. U. S.,* 380 F.2d 477 (10th Cir.); *State v. BeBee,* 110 Utah 484, 175 P.2d 478; *Lund v. 3rd Dist. Ct.,* 90 Utah 433, 62 P.2d 278; *State v. Carrington,* 15 Utah 480, 50 P. 526, distinguish: *Remmer v. U. S.,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654.

ELLETT and CROCKETT, JJ., concur.

MAUGHAN, Justice (dissenting):

From the ruling of the majority concerning the trial court's denial of defendant's motion for a mistrial, I dissent. A review of the facts as set forth in the record is essential to a comprehension of the issue involved.

Defendant was charged with murder in the first degree; the jury found him guilty of murder in the second degree. The events precipitating the motion for a mistrial occurred, after the twelve man jury was impaneled and sworn, and prior to the opening statements by counsel.

The twelfth juror was a Mr. Carpenter. Mr. Carpenter had a son-in-law, Bradley Dee, who was a news reporter for a local television station. On June 20, 1974, after the jury had been admonished not to discuss the case, Mr. Carpenter returned to his place of business, a garage. According to Carpenter, Dee came to the shop and inquired whether his father-in-law was on the jury. Carpenter responded in the affirmative, and they discussed the people involved and the trial. Dee reminded Carpenter they had talked about the murder last winter, when it happened—the victim was shot to death December 31, 1973. Dee, as a reporter, had covered the story, and had discussed his experiences with Carpenter.

This conversation brought back memories to Carpenter. According to Carpenter's recollection, the victim was killed in the Mill Creek area, the motive for the homicide being the victim was going to report a drug situation to the police. Carpenter had the impression Dee thought the defendant guilty; but Carpenter disclaimed a similar opinion. Carpenter thought the murdered party had information involving a drug situation, but he stated he would change his mind, if he heard other evidence. Carpenter admitted if his role were reversed with defendant's, he probably would not want a person on the jury, who had his knowledge and had engaged in the discussion, in which he had.

Bradley Dee testified he went to see his father-in-law to express the opinion it wasn't right for Carpenter to be on the jury, because of their discussions concerning the case. Dee was of the opinion Carpenter had forgotten, until he was reminded of the matter. Although Dee was not sure exactly what he had told his father-in-law, he believed basically it involved the information he had discovered through the police reports and personal interviews. He thought he informed Carpenter that a girl was shot and killed in Mill Creek; the suspect was Harry Maestas (he remembered the name from other stories he'd done about him); he didn't know whether the other charges were drugs or robbery. Dee thought he explained the motive for the killing and expressed his opinion of defendant's guilt to Carpenter. Dee was of the opinion defendant was probably guilty, and he expressed a bias in favor of the police.

Defense counsel made a motion for mistrial, citing factors he considered significant. First: Mr. Dee and not Mr. Carpenter came forth and apprised the court and counsel of the situation. (The prosecution claimed Mr. Dee was acting as a spokesman

for his father-in-law.) Second: the concession by Carpenter that if the positions were reversed, he wouldn't want defendant on his jury. Third: if this information had been available the previous day, defense counsel's method of exercising the peremptory challenges would have been different. Counsel observed even if there were not sufficient basis to challenge Carpenter for cause; people who have access to information and police reports are not the type, defense lawyers keep on juries, particularly in a capital offense case. Fourth: if Dee informed Carpenter of facts which turned up as evidence, this information would refresh his recollection, and, as a juror, he might place undue emphasis on it, because he would have heard it from two sources.

Should the trial court have granted the motion for a mistrial? Certainly.

Upon a motion for mistrial the court must weigh the danger of prejudice, to the defense, against the practicability of reducing or eliminating that danger by choosing a new jury. The essence of judicial discretion in dealing with a misadventure is to so manage matters so as to control the danger of jury prejudice, to the extent practicable.[1]

The following citation is an excellent statement of the principle:

In a court of law, where we are dealing with a multitude of human factors, perfection is unattainable and neither the defendant nor the State is entitled to a perfect trial. In so far as possible, however, both the State and the defendant are entitled to a fair and impartial jury. When events occur that cast an irrevocable cloud over the jury's fairness and impartiality, it is far better to grant the motion for mistrial and start over again. This action should not be taken lightly, but when the interest of justice so demands, it should nevertheless be done.[2]

We should not sacrifice to Chronos any part of such a fundamental bulwark of our society, as the jury system.

A private communication by a juror, which is unauthorized and forbidden by the admonition of the court to the jury, is deemed misconduct.[3]

. . . . misconduct by one or more of the jury, which might have been prejudicial to the accused, raises the presumption, especially in a capital case, that the accused has been prejudiced thereby, and vitiates the verdict, unless the prosecution shows beyond a reasonable doubt that the prisoner has received no injury by reason thereof. [Citations][4]

Article I, Section 12, Constitution of Utah guarantees to the accused a trial by an impartial jury. In *State v. Anderson*,[5] this court set forth the following test under this constitutional provision:

Under [the] state of facts can it be said that appellant had the full benefit of trial by an impartial jury and one in no way influenced except by the evidence and the instructions of the court relative to the law applicable to the facts in the case?

This court further observed that private communications, possibly prejudicial, between jurors and third persons are absolutely forbidden, and invalidate the verdict, unless their harmlessness, is made to appear. In conclusion the court said:

Authorities are cited holding that it is a matter of discretion with the trial court whether a new trial should be granted based upon misconduct of a juror, and a state of facts could readily be assumed under which an appellate court should not interfere with the discretion exercised by the trial court in denying a motion for a new trial based upon the alleged misconduct of a juror. But as we view the record in this case, the appellant was

---

1. *People v. Thomas,* 47 Cal.App.3d 178, 120 Cal.Rptr. 637 (1975).

2. *State v. Reynolds,* 11 Ariz.App. 532, 466 P.2d 405 (1970).

3. *State v. Thorne,* 39 Utah 208, 230, 117 P. 58 (1911).

4. *State v. Morgan,* 23 Utah 212, 226, 64 P. 356, 360 (1901).

5. 65 Utah 415, 419, 237 P. 941, 943 (1925).

denied a constitutional right to be tried and convicted, if convicted, by an impartial jury, as that term is used in the Constitution and is construed by courts.[6]

A significant feature of the Anderson case was the juror was not consciously affected in rendering his verdict, but the conduct was such that it might tend, consciously or unconsciously, to influence the judgment of the juror.[7]

In the matter under review, the juror, Mr. Carpenter, contrary to the admonition of the trial court, did participate in a conversation regarding the trial. This discussion triggered his memory concerning facts and impressions involving the homicide. He aptly verbalized the effect of these past memories, when he stated that if his role were reversed with defendant's he wouldn't want him on the jury. It cannot be established beyond a reasonable doubt that juror Carpenter was in no way influenced con-

sciously or unconsciously except by the evidence and instructions of the court, in rendering his verdict. Thus, defendant was denied a trial, by an impartial jury. This entire matter could have been averted by the trial court granting the motion for a mistrial, thus permitting the selection of a new jury free of any improper influence. It was an abuse of discretion to deny the motion. Defendant's conviction should be reversed, and he should be granted a new trial.

WILKINS, J., concurs in the views expressed in the dissenting opinion of Mr. Justice Maughan.

---

**6.** At p. 423 of 65 Utah, at p. 944 of 237 P.

**7.** A communication between a stranger and a juror vitiates the verdict if the communication is prejudicial to the defendant. It is immaterial that no improper motive occasioned the contact, or that it was unintentional, or that no actual wrong resulted. The criterion is the result of the contact upon the jurors. . . .

A private communication between a stranger and juror gives rise to a presumption of prejudice. . . . In any event, the burden rests heavily upon the government to establish that outside contact with a juror was harmless to the defendant. . . . Anno: Stranger's communication with jury in a federal criminal case as prejudicial, 1 L.Ed.2d 1849, § 2, p. 1850–1851.