[Crim. No. 42000. Second Dist., Div. Six. Nov. 30, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
TOM WILLIAM ANDREWS, Defendant and Appellant.

## Counsel

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Jill Ishida, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Howard J. Schwab and Stephen M. Kaufman, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**STONE, P. J.**—Tom William Andrews appeals from a jury conviction of two counts of robbery (Pen. Code, § 211); two counts of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd.(a)); one count of unlawfully taking a vehicle not his own (Veh. Code, § 10851); and findings that appellant inflicted great bodily injury upon the victims of the two robbery counts (Pen. Code, § 12022.7); and that as to one of the robberies, appellant inflicted great bodily injury on a person over the age of 60 years.

The crucial question presented herein is whether the trial court abused its discretion by failing to grant a new trial after jurors read a newspaper article indicating that appellant's wife had entered a plea of guilty to charges stemming from the same incidents for which appellant was on trial and that appellant had other felony charges pending in Los Angeles. We find that appellant's motion for a new trial should have been granted and we remand for a new trial.

### Facts

On May 21, 1981, at approximately 4 p.m., a white woman, later identified as Susan Andrews, and a black man, later identified as appellant, entered Pandora's Box, a clothing store. Susan Andrews brought a blouse to the sales counter, said she was going to her car for the money and would return. Employee Rose Zubeck began to vacuum the rug when someone approached her from behind and attempted to strangle her. She saw a white shirt sleeve and black hand around her neck before she passed out.

About midnight that same day, appellant and his wife Susan, David Mauricio, James Hackett and two Englishwomen visited several bars and subsequently went to Mauricio's boat. At approximately 4 a.m., after leaving

Mauricio and the Englishwomen at a motel, appellant and wife drove away with Hackett in Hackett's automobile.

At 4:23 a.m. a neighbor of Hackett who lived in the apartment below that of Hackett heard noises of drawers being opened and shut as well as a loud crash. Later that day, a cleaning woman heard moans from Hackett's apartment, entered to investigate and saw him lying on the floor, head bleeding, pockets turned inside out, furniture disarranged, a large pool of blood in the hallway, and a gavel wrapped in a towel on the bar. Hackett's car was later found in Los Angeles. Appellant's identity was established through conversations with David Mauricio and photographs taken the evening of the incident by one of the Englishwomen. After his arrest, appellant first denied any involvement in the crimes, but upon learning of his wife's arrest, changed his story and said he would "take the whole rap" and to leave his wife out of it.

On December 10, 1981, during the jury trial, an article appeared in the Santa Barbara News Press entitled "Robbery-beating trial under way" concerning the case at bench. Along with a description of the crimes and the status of the trial, the article included the following: "Andrews, who is being held in the county jail on $25,000 bond, was charged with multiple counts of armed robbery and assault with a deadly weapon, as well as auto theft. He also faces felony charges in Los Angeles. [¶] Andrews' wife, a co-defendant in the case, was sentenced Oct. 7 to three years in prison after pleading guilty to a charge of armed robbery. Susan Lane Andrews, 24, who was reared in Santa Barbara, entered the plea in connection with the clothing store robbery."

Defense counsel moved for a mistrial and requested that the jurors be questioned individually in chambers to ascertain whether any had read the article. The trial court denied the motion, refused to question the jury but admonished the jurors to disregard and not to read any news releases regarding the trial.[1]

During jury deliberations, the court discovered that exhibits which were not introduced into evidence were sent mistakenly to the jury room. One of the exhibits was the December 10th article from the Santa Barbara News-Press, the subject of appellant's prior motion for a mistrial.[2] Said error was

---

[1]Colloquy between the court and defense counsel: "The Court: Well, I don't know if any of the jurors oversaw [sic] the article—even if they did, I don't think it is grounds for a mistrial and the motion is denied. Mr. Herman: We are not even going to ask them if they read it? The Court: Nope, I am going to advise them not to read any more."

[2]The other exhibits were: nine color photographs of a black male lineup; police report of Officer Knapp; Miranda card; a newspaper article dated October 7, 1981, regarding the crime, and a jury list.

brought to the court's attention when the jurors submitted a list of questions to the court, one of which was: "What is the pending charge against Andrews in Los Angeles that was referred to by Mr. Watson (a detective assigned to the case)?" Since there was no mention during trial of pending charges against appellant, the question indicated that at least one juror had read the article. The court admonished the jury as follows and ordered them to continue deliberation: "You will recall that I told you when a newspaper article of December 10 appeared in the News-Press that you were to disregard it and not to read it and not to read any other News-Press releases or any other news media releases that might be made, whether it was TV, radio or what have you in regard to this case, and these exhibits have now been removed from the jury deliberation room on my order. This matter gives me a great deal of concern and a decision has to be made by myself as to what to do about this problem. And I am going to do so before 10:00 this morning. However, so we won't waste time I'm going to ask you to resume your deliberations and I'm going to order you not to consider in any manner whatsoever any of those exhibits or the contents of same, and they shall take no part in your deliberation. They have nothing to do with—directly to do with the case pending before you jurors, and I expect all of you not to violate that and if there is any violation it's going to have serious consequences. I don't know how I can make it any more emphatic or clear than that. I'm going to ask you now, please, to retire to the jury deliberation room and resume your deliberations, if you will, please."

Appellant's counsel moved for a mistrial, indicating that while he had no specific objection to questioning the jury in chambers regarding the information in the article, and in fact had requested such a procedure earlier in the trial, he felt that at this juncture a mistrial was the only adequate remedy. The court denied his motion and did not question the jury. After the jury returned verdicts of conviction as to all counts, defense counsel's motion for a new trial was denied on the basis that the alleged jury misconduct was harmless beyond a reasonable doubt.

## DISCUSSION

Although the jury's obtaining of knowledge of the newspaper articles was not purposeful, that the articles in fact were read or discussed by jurors falls within the category of juror misconduct, albeit unintentional. (See *People v. Kitt* (1978) 83 Cal.App.3d 834, 850 [148 Cal.Rptr. 447].) It is well settled that a presumption of prejudice arises from any juror misconduct. (*People v. Honeycutt* (1977) 20 Cal.3d 150, 156 [141 Cal.Rptr. 698, 570 P.2d 1050].) Unless the prosecution rebuts that presumption by proof that no prejudice actually resulted, the defendant is entitled to a new trial. (*People v. Pierce* (1979) 24 Cal.3d 199, 207 [155 Cal.Rptr. 657, 595

P.2d 91].) Six of the ten jurors who responded by affidavit to the prosecutor's questionnaire after the verdict was returned had read the article.[3]

■ " 'In the language of Lord Coke, a juror must be as "indifferent as he stands unsworn." [Citation.] This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies.' " (*Turner* v. *Louisiana* (1964) 379 U.S. 466, 472 [13 L.Ed.2d 424, 428, 85 S.Ct. 546].)

■ Evidence of other alleged crimes is inadmissible when it is offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged, because the probative value of such evidence is outweighed by its prejudicial effect. (*People* v. *Haston* (1968) 69 Cal.2d 233, 244 [70 Cal.Rptr. 419, 444 P.2d 91].) When evidence that a person committed a crime is relevant to prove some fact other than his disposition to commit such acts (such as motive, opportunity, intent, plan, identity, absence of mistake), the evidence "should be received with 'extreme caution', and if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused." (*Id.*, at p. 244.)

■ Since the mere fact that appellant was "facing other felony charges" could be relevant only to his propensity to commit crimes, it would be inadmissible. (Evid. Code, § 1101.) Similarly, evidence of a co-defendant's guilty plea has been held prejudicial. (See *People* v. *Leonard* (1983) 34 Cal.3d 183 [193 Cal.Rptr. 171, 666 P.2d 28]; also *People* v. *Rolon* (1967) 66 Cal.2d 690 [58 Cal.Rptr. 596, 427 P.2d 196] re effect of admission of prior conviction with same codefendant.)

The court, out of the presence of the jury, summed up the defense argument regarding the codefendant's plea as follows: "Well, Mr. Herman's point is that if the other actor in this situation with Susan was the heavy, and if Susan pleads guilty, therefore, the other party involved all the more so must be guilty and that got through to the jury through this newspaper article."

The question remains whether the presumption of prejudice from the juror misconduct of reading the articles not admitted, nor likely admissible, into

---

[3]The prosecutor asked the jurors the following questions to be answered in their affidavits: "(1) Did you, individually, read any part of the newspaper articles? (2) Was any portion of the newspaper article read out loud in the jury room to you by any other juror? (3) Following the removal of the newspaper articles on the evening jury deliberations began, and following the comment by Judge Stevens to you that the articles were to be disregarded, was the subject raised in the jury room by anyone, and if so, to what extent? (4) Was there any preliminary vote taken on any of the verdicts prior to the time the judge admonished the jury to disregard the presence of the newspaper articles?"

evidence was rebutted. "[T]he presumption may be rebutted by proof that no prejudice actually resulted." (*People* v. *Honeycutt, supra,* 20 Cal.3d 150, 156.) " '[W]hether a defendant has been injured by jury misconduct in receiving evidence outside of court necessarily depends upon whether the jury's impartiality has been adversely affected, whether the prosecution's burden of proof has been lightened and whether any asserted defense has been contradicted. If the answer to any of these questions is in. the affirmative, the defendant has been prejudiced and the conviction must be reversed. On the other hand, since jury misconduct is not per se reversible, if a review of the entire record demonstrates that the appellant has suffered no prejudice from the misconduct, a reversal is not compelled.' [Citations.]" (*People* v. *Sutter* (1982) 134 Cal.App.3d 806, 820 [184 Cal.Rptr. 829].)

 Respondent asserts that as to the instant case, affidavits of the jurors that they acted in conformity with the court's admonition is sufficient to dispel the presumption of prejudice.[4] We disagree.

In *People* v. *Thomas* (1975) 47 Cal.App.3d 178 [120 Cal.Rptr. 637], defendant was indicted for grand theft in violation of Penal Code section 487, subdivision 2. He moved for a mistrial on the grounds that, after the jury had been impaneled but before taking of testimony began, four jurors read a newspaper story which identified the case by name and related that a codefendant had pleaded guilty and had been sentenced. Said motion was denied and he was subsequently convicted. The Court of Appeal reversed, holding that it was an abuse of discretion to deny the motion for mistrial. Although the likelihood of prejudicial effect on the minds of the four jurors who saw the article was obviously substantial, when the article was brought to the court's attention and the jurors were questioned separately in chambers, eight jurors had not seen the article at all. This indicated to the appellate court that there would have been no difficulty, if a mistrial had been granted, in selecting a new jury free of any improper influence. The court further held that the granting of the motion would have created no conflict with the constitutional guaranty against double jeopardy.

Respondent argues that *Thomas* is distinguishable in that the jury in this case had not seen the articles at any early stage of the proceeding. However, the time at which a jury obtains possession of an inadmissible

---

[4]Juror affidavit number 4 indicated that it was suggested "We discontinue any further talk regarding the article as well as disregard their contents. This was agreed upon by all jurors and, from that point on, the subject of the newspaper articles was never brought up by anyone." Jury affidavit number 8 stated in part: "We were all asking each other if we were supposed to have all these articles of news to look at and we thought we were since they were there."

document or other information not introduced into evidence is irrelevant to a consideration of whether prejudicial error involving the jury occurred. (*People* v. *Boyd* (1979) 95 Cal.App.3d 577, 586 [157 Cal.Rptr. 293].) Additionally, assuming arguendo that the time the evidence was received is relevant, since the December 10th article was published earlier in the trial and the trial court refused to conduct a voir dire of the jury at that time, we do not know whether the information came to their attention for the first time during deliberations.

Respondent further contends that the evidence is not prejudicial because the apparent defense theory was that appellant's wife participated in the crimes with some black man other than appellant. Therefore, according to respondent, evidence of her guilty plea is consistent with the defense theory. Nevertheless, consistency with the defense theory is only one factor to be considered. (See discussion, *supra*.) ▓ Whereas there was substantial evidence to uphold the jury's verdict absent prejudicial error, since a defendant charged with a crime has a right to the unanimous verdict of 12 impartial jurors, a conviction cannot stand if even a single juror has been influenced improperly. (See *People* v. *Pierce, supra*, 24 Cal.3d 199, 208.) We find no factual distinction between the instant case and *People* v. *Thomas, supra*, 47 Cal.App.3d 178. Had the trial court conducted a voir dire of the jury in chambers when appellant first moved for a mistrial, it might have ascertained whether any juror had read the articles in question, and, if so, the court could "weigh the danger of prejudice to the defense against the practicability of reducing or eliminating the danger by choosing a new jury; . . ." (*People* v. *Thomas, supra*, 47 Cal.App.3d at p. 181.) Failing that procedure, the court still could have conducted a jury voir dire after the problem had arisen during deliberation.

A posttrial evidentiary hearing is not necessarily insufficient in such case. (See *Smith* v. *Phillips* (1981) 455 U.S. 209 [71 L.Ed.2d 78, 102 S.Ct. 940].) ▓ In the instant case however, the jury affidavits failed to rebut the presumption of prejudice and, because of the potentially injurious nature of the inadmissible evidence given to the jury, we cannot be assured that the prosecution's burden had not been lightened. It follows, consequently, that we cannot say appellant did not suffer prejudice. ▓ We hold that when similar jury misconduct is brought to the court's attention in future cases, the preferred procedure is to question the jurors in chambers to ascertain knowledge and prejudice, if any, to defendant and, based upon the information obtained, decide whether the proper remedy is admonishment, instruction or mistrial.

Because our decision herein necessitates reversal for a new trial, it is unnecessary to address individually the other errors alleged to have occurred

during trial, which in any case, we deem to be without merit. Any errors in sentencing are moot.

The judgment is reversed and remanded for a new trial.

Abbe, J., and Gilbert, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 25, 1984.