[No. D006283. Fourth Dist., Div. One. Sept. 16, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL VALENTINE, Defendant and Appellant.

COUNSEL

Ellen Geis, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Janelle B. Davis and David F. Taglienti, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

STANIFORTH, J.*—Michael Valentine appeals his jury-tried conviction of cultivating marijuana (Health & Saf. Code, § 11358) and possessing marijuana for sale (Health & Saf. Code, § 11359). Valentine contends (1) the court prejudicially erred in allowing evidence of intravenous drug use to show he was cultivating marijuana; (2) the evidence was insufficient to support his conviction; and (3) the court erred in imposing two restitution fines for a victimless crime. We agree the introduction of evidence Valentine was an intravenous drug user was improper and accordingly reverse on that ground.

FACTUAL AND PROCEDURAL BACKGROUND

At about 7 a.m. on June 19, 1985, 18 sheriff's deputies forcibly entered the house at 1425 East Alvarado in Fallbrook with a warrant to search the premises. Valentine and his girlfriend were asleep in the east bedroom and Alvin Jenkins was also in the house.

The officers searched the premises and found 90 marijuana plants, with an average height of 4 feet, growing about 20 yards from the house in a garden area behind a trailer. The garden was weeded and contained wet soil and was surrounded by bamboo and other trees.

In the north bedroom, the officers found loose marijuana seeds on a wall unit shelf and on a night stand. They also found two magazines dated October 1983 and August 1984 addressed to Valentine at 1425 East Alvarado and a "Sweepstakes Notification" addressed to Valentine. A hypodermic syringe and needle were also found in that bedroom.

In the east bedroom, the officers seized a hypodermic syringe, a wooden plaque of a laminated marijuana leaf, an envelope addressed to Valentine at 1425 East Alvarado, and Valentine's driver's license with the address 1425

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

East Alvarado. The deputies also seized a marijuana pipe, and a hand-held scale.

Two prescription bottles filled with marijuana seeds, one of which contained Valentine's name and the date 1980, were found in the living room. The officers also found in the living room two books entitled "Marijuana Grower's Guide" and "Magical Mushroom Handbook," two hypodermic syringes, two marijuana pipes and an ounce-quantity scale.

Valentine was charged with cultivating marijuana, possessing marijuana and possessing a hypodermic needle and syringe. After trial, the jury failed to reach a verdict and the court declared a mistrial. Valentine then successfully moved to dismiss the charge of possessing a hypodermic needle and syringe.

After a second trial on the remaining two counts of cultivating marijuana and possessing marijuana for sale, the jury convicted Valentine on both counts. At sentencing, the court granted probation conditioned on Valentine serving 180 days in jail. The court also imposed (1) a fine of $500 including penalty assessments; (2) a fine of $500 payable to the state restitution fund; and (3) a restitution fine of $500 under Government Code section 13967, stayed under Penal Code section 1202.4, subdivision (b), the stay to become permanent upon successful completion of probation.

DISCUSSION

I

■ Valentine contends the court erred in allowing the People to introduce evidence of intravenous drug use to show he was cultivating marijuana.

This cause had been previously tried and the jury deliberations resulted in a mistrial as to the then three counts, count three being a charge of possession of needles and syringes. In the second trial, the needles and syringes were again introduced in evidence. At the beginning of the second trial, Valentine, after dismissal of the third count, sought by an *in limine* motion to have the court rule the needles and syringes evidence was irrelevant, because there was no foundation and the evidence could not be in any way logically related to the charges being tried, to wit, cultivating marijuana for sale. It was further argued that such evidence would be highly prejudicial under Evidence Code section 352. The court ruled the needles and syringes admissible *"to establish the fact that the marijuana plants would be owned by the defendant."* The court reasoned in response to further objections that the evidence would be allowed because it was reasonable to infer that a person who injects narcotics also grows marijuana. The court in addition to

admitting the evidence of the needles and syringes allowed a deputy sheriff to testify for the People for purposes of impeachment that in his opinion Valentine had injected needles or had his arm punctured with needles in the past.

Valentine did not raise the issue of use of intravenous or narcotic drugs; rather the People did in their case-in-chief by introducing evidence of the needles and syringes on direct examination.

Barry Ellis Sweeney testified on direct examination: "Q. Detective Sweeney, based on your training and experience working as a narcotics officer, have you encountered hypodermic syringes before?

"A. Yes, I have.

"Q. How are they used in connection with the use of narcotics, controlled substances?

"A. They're used to inject.

"Q. What do you mean, 'They're used to inject'?

"A. The controlled substances.

"Q. And have you previously been involved in searches of residences where marijuana was found where hypodermic syringes were also found?

"A. Yes, I have.

"Q. Would that be on more than one occasion?

"A. Yes."

On cross-examination, Valentine was asked; "Now these hypodermic needles that were in the house, isn't it true that you were using those to inject yourself with narcotics? . . . You were using those to inject yourself, correct?" Valentine responded he was not. The People contended because Valentine denied that in 1985 he had used needles and syringes to inject himself, they were entitled to impeach him with evidence showing he had. The court allowed the "impeaching" testimony of the deputy sheriff and former narcotics officer who examined Valentine's arms and found needle tracks.

At first the court felt the testimony Valentine might be using hypodermic needles at the time of the trial would be remote to the issue of whether he was using them two years earlier in 1985, and that the prejudice would outweigh the probative value. However, the court reserved its ruling and ordered Valentine to be examined by the deputy.

The prosecutor told the court he had found old track marks on Valentine's arm. The court ruled it should be admitted on the ground "[i]t involves his credibility." An Evidence Code section 352 objection was also raised by Valentine, but overruled. The court finally permitted Deputy Cross to testify over Valentine's renewed objections. The court felt that Cross's testimony was sufficiently probative with respect to the issue of credibility as to permit him to testify subject to a limiting instruction. Valentine then sought to introduce the dismissal of former count three but the court denied it.

## II

Evidence of a collateral independent crime is not admissible unless it tends directly to establish the crime charged by proving a material fact or intent, premeditation, guilty knowledge, malice or a common plan or scheme. (*People* v. *Hill* (1967) 66 Cal.2d 536, 555 [58 Cal.Rptr. 340, 426 P.2d 908]; *People* v. *Meacham* (1984) 152 Cal.App.3d 142, 156 [199 Cal.Rptr. 586]; Evid. Code, § 1101.)

Evidence Code section 1101 provides: "(a) Except as provided in this section and in sections 1102 and 1103, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

"(b) Nothing *in this section* prohibits the admission *of evidence that a person committed a crime, civil wrong,* or other act when relevant *to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident,* or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." (Italics added.)

It was said in *People* v. *Albertson* (1944) 23 Cal.2d 550, 578 [145 P.2d 7]: "(b) [C]ollateral offense cannot be put in evidence without *proof* that the accused was concerned in its commission; (c) there must be identity of person or crime, scienter, intent, system, or some integral parts of the exceptions established between the charge under trial and that sought to be introduced, that clearly connects the accused, showing that the person who committed the one crime must have committed the other." (Italics added; see also *People* v. *Poulin* (1972) 27 Cal.App.3d 54, 65 [103 Cal.Rptr. 623].)

The Supreme Court in *People* v. *Thompson* (1980) 27 Cal.3d 303 [165 Cal.Rptr. 289, 611 P.2d 883], held, in ascertaining whether evidence of other crimes has a tendency to prove the material fact, the court must first determine whether or not the uncharged offense serves logically, naturally,

and by reasonable inference to establish that fact. In addition, " 'admission of other crimes evidence cannot be justified merely by asserting an admissible purpose' " in the abstract. *The key question is " 'whether the particular evidence of defendant's other offenses here offered is logically relevant to prove the defendant's intent in this case.' " (Id.* at p. 319, italics added.) Lastly, since " 'substantial prejudicial effect [is] inherent in [other crimes] evidence,' uncharged offenses are admissible only if they have *substantial* probative value. If there is any doubt, the evidence should be excluded." (*Id.* at p. 318.)

The test of admissibility is whether there is some clear connection between the collateral offense and the one charged so that it may logically be inferred if the defendant committed one offense he must be guilty of the other. (*People* v. *Cramer* (1967) 67 Cal.2d 126, 129-130 [60 Cal.Rptr. 230, 429 P.2d 582].) ▉ Thus, while courts have allowed evidence of narcotics addiction and financial condition to establish a motive for the possession of narcotics and their sale (see *People* v. *Morales* (1979) 88 Cal.App.3d 259, 263-264 [151 Cal.Rptr. 610]), yet evidence of addiction alone without proof of the extent of it, its expense and frequency of use is not sufficiently relevant to establish motive. In *People* v. *Reid* (1982) 133 Cal.App.3d 354 [184 Cal.Rptr. 186], the court said: "Appellant concedes that a defendant's need for money may be relevant to show motive in a robbery case. Appellant also concedes if a defendant has a drug habit which requires expenditures beyond his means, then such evidence is logically relevant to prove motive under Evidence Code section 1101. (*People* v. *Perez* (1974) 42 Cal.App.3d 760, 767-768 [117 Cal.Rptr. 195].)" (*Id.* at p. 362.)

However, the court concluded: "There is no doubt that in the instant case the drug evidence (appellant's track marks and finding drug paraphernalia in his home), tended to establish appellant was a drug user. Appellant does not contest this claim. *However, in order for the drug evidence to be admissible in this case, the prosecution must have established a reasonable basis for inferring the cost of appellant's habit or use.* There was no evidence as to what drugs appellant used, or how often. There was no evidence to indicate how fresh appellant's track marks were. Absent that link, the second requirement of the test set forth in *People* v. *Thompson, supra,* 27 Cal.3d 303, is not met. *The fact that appellant used drugs, without more, does not have a tendency to prove a motive for robbery.* The prosecution's failure to establish these matters, coupled with the fact that other crimes evidence involving the use of narcotics presents a grave danger of improperly influencing the jury, establishes that the evidence should have been excluded. (Evid. Code, § 1101, subd. (a).)" (Italics added, 133 Cal.App.3d at p. 363.)

Finally, all doubts concerning the connection of the crime charged must be resolved in the accused's favor. (*People* v. *Sam* (1969) 71 Cal.2d 194, 203 [77 Cal.Rptr. 804, 454 P.2d 700].)

Here, the People did not make even an attempt to explain why the proffered evidence would be relevant and admissible under Evidence Code section 1101, subdivision (b). There was no offer of proof to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident; rather the People offered the hypodermic needles and syringes on the theory that someone involved in one type of narcotics activity would also be involved in smoking marijuana. "They kind of run in the same crowds" said the prosecutor. This same argument was made by the prosecutor to the jury. Not only was the prosecutor allowed to argue in such fashion, but there was the testimony of the expert who told the jurors where hypodermic needles are found, so is marijuana. This was an invitation to specious reasoning and should be excluded from civil trials as well as criminal trials with greater force and reasoning.

The court expressed approval of the prosecutor's reasoning when it said: "[T]he People are entitled to establish and to make the argument that the people may use controlled substances, and marijuana is a controlled substance. And it's reasonable for them [the jury] to believe that if . . . Mr. Valentine was using hypodermic needles for the administration of controlled substances, that they can use that as a matter of circumstantial evidence to infer that he is the owner or person in control of the marijuana plants. That's what they can do. That's what I'm finding."

The evidence was not admitted for one of the lawful exceptions under Evidence Code section 1101, subdivision (b) but rather for the purpose of establishing an inference of Valentine's propensity or disposition to commit crimes in general and "drug crimes" in particular. This is an inadmissible purpose. (See *People* v. *Alcala* (1984) 36 Cal.3d 604, 635 [205 Cal.Rptr. 775, 685 P.2d 1126]; *People* v. *Andrews* (1983) 149 Cal.App.3d 358, 364 [196 Cal.Rptr. 796, 46 A.L.R.4th 1].)

## III

Valentine further contends improperly allowed cross-examination cannot lay a foundation for the introduction of inadmissible matters in rebuttal. In *People* v. *Davis* (1965) 233 Cal.App.2d 156, 160 [43 Cal.Rptr. 357], the defendant denied on cross-examination that he was under the influence of narcotics at the time of his arrest. The charges were driving a getaway car and robbery. The People called the arresting officer as a rebuttal witness who testified over objection that in his opinion Davis had been under the influence of narcotics at the time of his arrest. The court gave a limiting instruction that the evidence was to be used only on the issue of credibility. However, the appellate court found the connection between use of narcotics and robbery was tenuous at best (*id*. at p. 161) *and rejected the credibility rationale out of hand as the issue of narcotics usage had been*

*raised by the prosecution.* (See also *People* v. *Vanderburg* (1960) 184 Cal.App.2d 33, 40-42 [7 Cal.Rptr. 287].)

The issue of intraveneous drug use by Valentine was raised by the prosecutor. He did so by improperly introducing the needle and syringe and by asking Valentine on cross-examination whether he had ever used needles and syringes to inject narcotics. He then impeached him by the testimony of Deputy Cross that Valentine's right arm had puncture marks.

Such evidence was improperly admitted in violation of Evidence Code sections 786 and 787, contrary to the mandates of Evidence Code section 1101. This impeachment was an improper rebuttal to a collateral matter improperly raised on cross-examination. Valentine objected to the introduction of the needles and syringes and track evidence under Evidence Code section 352. The trial court's weighing of the probative value against the prejudice of introducing the needles was peremptory. "I think it's probative, I don't think it's—I think it's extremely probative. I won't find that the prejudice if there is any is in any way outweighs the probative value with respect to the hypodermic needles." This ruling was made at a time when the court had no evidence of the prejudicial effect of such evidence on Valentine.

The evidence of intraveneous drug usage was not only irrelevant to the crimes charged but was highly prejudicial to Valentine. The prosecutor admitted that he wished to introduce the track evidence to link Valentine to the needles and syringes rather than to the marijuana.

The court gave limiting jury instructions, CALJIC No. 2.09, and modified 2.50. Such limiting instructions do not confer on jurors an ability to weigh improperly admitted evidence of a collateral offense which has been introduced over objections. The limiting instructions in this case were in direct opposition to what the prosecutor told the jury: to consider the evidence of the needles and syringes as proof of Valentine's (bad character?) commission of the crimes charged. The jury was told to consider the tracks evidence as proof that Valentine was a liar. Both the judge and the prosecutor repeatedly referred to the needles and syringes as having a direct bearing on Valentine's propensity to engage in the growing and sale of marijuana. The court found the association a reasonable inference for the jury to make. In the same breath as the court told the jurors not to consider evidence of needles and syringes to prove Valentine a person of bad character or disposed to commit crimes, the court told them they could consider such evidence if it tended to show Valentine possessed or had knowledge of the marijuana plants. The track evidence was impermissibly introduced for the purpose of impeaching credibility. Although the jurors were instructed to

consider it for that purpose, the limiting instruction would not cure the error committed.

## IV

 This case factually, by any stretch of the imagination, cannot be regarded an overwhelming case on behalf of the People. The two charges were previously tried together with the needles and syringes charge. In that case, the court declared a mistrial on all counts in view of an eight-to-one vote for acquittal on count one (cultivating marijuana), and ten-to-two vote for acquittal on count three (possessing needles and syringes) and an evenly divided jury on count two (possession for sale). The entire focus of Valentine's trial from marijuana onto needles and syringes and tracks on his arms cannot be viewed other than highly prejudicial and warrants reversal.

In view of our decision to reverse and remand for a new trial, we do not examine the further claims of error.

### DISPOSITION

Judgment reversed.

Work, Acting P. J., and Todd, J., concurred.