Filed 12/9/13  P. v. Calloway CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B239805 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA372306) |
| RAYMOND CALLOWAY, et al., | |
| Defendants and Appellants. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Barbara R. Johnson and Craig J. Mitchell, Judges.  Modify and affirm.

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant Raymond Calloway.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant Jason Bridges.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

These appeals arise from the armed robbery of a Trader Joe's store. Appellant Raymond Calloway was convicted of four counts in the first trial, but the jury was unable to reach a verdict on the counts against his co-defendant, appellant Jason Bridges. Each was convicted as charged at the second trial.

Calloway and Bridges challenge the sufficiency of the evidence supporting their convictions of robbing two employees who remained secreted during the entire episode and who were unknown to them. Bridges challenges the evidence identifying him as one of the robbers and the jury's finding that he assaulted three employees who were in a back room. Bridges argues the trial court erred by informing the second jury that Calloway had been convicted of several counts in the first trial.

Calloway argues the trial court abused its discretion in declining to strike his strike prior conviction and that it erred in imposing sentence on count 1 from the first trial in violation of Penal Code section 654.[1] Bridges argues, and respondent concedes, that his sentence on count 3 should have been stayed under section 654. Each appellant joins in the issues raised by the other.

Respondent asks that we modify the abstract of judgment to reflect the correct amounts for the mandatory criminal conviction assessment under Government Code section 70373 and the court security fee under section 1465.8.

We find sufficient evidence to support the robbery convictions as to the hidden employees. There was substantial evidence identifying Bridges as the lookout during the robbery and supporting the convictions for assault of the three victims moved to a wine room at the rear of the store. Since the jury in the second trial was asked to determine Calloway's guilt on special gun use allegations arising from the counts on which he was convicted in the first trial, we find no abuse of the trial court's discretion in informing the single jury at the second trial of those convictions.

The trial court did not abuse its discretion in denying Calloway's motion to strike a 1987 attempted murder strike allegation. Section 654 does not apply to his sentence

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

2

under count 1 of the first trial because Calloway acted with a separate objective in committing that crime. We agree with Bridges and respondent that section 654 does apply to the sentence on count 3 in the second trial and direct the modification of the abstract of judgment. We conclude that the People did not forfeit the claim that the abstract of judgment must be corrected to reflect the correct criminal conviction assessment under Government Code section 70373 and the court security fee under section 1465.8, and order that the abstract of judgment be modified accordingly.

### FACTUAL AND PROCEDURAL SUMMARY

At 10:00 p.m. on May 30, 2010, a number of employees were still working at a Trader Joe's store in Eagle Rock. By that time, the store was closed to the public. Three men entered through the back of the store. The man later identified as Calloway carried a semiautomatic weapon and a bag. He was accompanied by Bridges, who was unarmed. A third man, not identified, also was armed with a semiautomatic gun.

Calloway pointed his gun at employee Angelica Arteaga and told her to be quiet. Employee Andrew Bates walked up. Calloway pointed the gun at Bates and signaled that he and Arteaga should stand together. When Calloway pointed the gun at Bates's forehead, Bates said "whoa" and Calloway told him to "'[s]hut the fuck up.'" Bates and Arteaga could see employee Douglas Hilton in a nearby room. Calloway directed Arteaga to call him over. Arteaga did so and Hilton joined the group. Calloway directed the three employees to walk outside the store. He followed with his gun pointed at them. He signaled them to walk to a room called the wine bank, where the third robber waited.

Once they were inside the wine bank, Calloway left and the third robber ordered the three employees to remove the contents of their pockets. Arteaga did not have anything in her pockets, the others did and removed the items. The third robber ordered the employees to lay on the floor face down. They complied. The third robber stood at the doorway, and threw their possessions on the floor, where they later were recovered.

In the meantime, employee Adam Kuehlthau was at the captain's desk, an office area in the front of the store, with manager Ryan Gilger. There was a three-part safe in

the captain's desk area. Two doors were unlocked, but the third was locked and could only be opened by an armored truck service that came in the morning. Gilger was counting money and preparing to put it in one of the safes. Calloway and Bridges walked up to the captain's desk where Bridges took up a position as lookout, nervously looking around the store.

Gilger asked if he could help the two men. Calloway pulled out his weapon, pointed it at Gilger's chest, and asked for the money. Gilger, who had put his hands up, turned and opened the unlocked door to the middle safe. Calloway held the gun with his right hand while loading the money into a bag. Bridges was yelling at Calloway to hurry up, or saying that the employees were looking at him. Employee Ernie Morales, who was working in the produce area near the front of the store, saw Calloway and Bridges at the captain's desk. Since Gilger and Kuehlthau had their hands up, Morales believed that a robbery was occurring. Morales walked toward them. Bridges looked at him, yelled something, then ran out the back exit.

Calloway was occupied removing money from the safe. Morales picked up a bottle of wine, walked quickly to the captain's desk, and hit Calloway on the back of the head with the bottle. Calloway spun around and shot Morales. They wrestled over the gun. More shots were fired. Morales lost his grip on the gun and begged Calloway not to shoot him. He shoved Calloway away and ran down the aisle in an attempt to get away. Morales feared for his life.

After Bridges left the captain's desk area, he appeared in the door of the wine bank and excitedly told the third robber, "'Let's go.'" Both men ran out of the wine bank. The three employees at that location waited a brief time, then Hilton called 911. Arteaga was in fear for her life while in the wine bank.

Two Trader Joe's employees on duty at the time of the robbery were able to hide from the robbers. Jayson Gonzalez saw two African American men walk into the store after it was closed. They walked toward the front, carrying bags. He saw Gilger and Kuehlthau hold their hands up in the air and believed a robbery was occurring. Gonzalez hid behind an aisle, but could see what was happening at the captain's desk. He saw

4

Morales pass by, then come back into view with a bottle of wine in his hand, walking toward the entrance to the captain's desk. Gonzalez moved forward to a location from which he could see the captain's desk because he was concerned that Morales might do something. He saw Morales lift the wine bottle over Calloway's head and smash it down. Gonzalez heard a crash when the bottle struck. He immediately heard four or five gunshots in repeated succession. Gonzalez ducked down out of sight. Then he moved forward again and heard sounds of wrestling at the captain's desk. He saw the robber and Morales rise up while the robber was holding the gun in the air, as if fighting over it. Gonzalez saw Morales hold his hands up, and say, "'Don't Shoot. Don't Shoot. I give up.'". After the robbers left, Morales went up to Gonzalez and asked him to call an ambulance because he had been shot in the leg.

Employee Nelson Zaldana first noticed the robbers when they were at the captain's desk. He too believed a robbery was occurring because he saw Gilger and Kuehlthau with their hands up. Zaldana was near the entrance to the store near the captain's desk. He walked to the back of the store. He could not see what was happening at the captain's desk from that vantage point. He heard about four gunshots in fast succession, causing him to fear for his life. He did not see the gunshots. He and Gonzalez laid Morales down after the shooting and put pressure on the wound where it was bleeding.

Three .40 caliber bullet casings were collected from the captain's desk area and one live .40 caliber bullet from the floor of the back room. A bullet had gone into a photocopier at the captain's desk. The casings and bullet were fired from a semiautomatic gun. There also was a bullet hole in the ceiling through a light fixture near the captain's desk.

The third robber was never identified or apprehended. Calloway and Bridges were identified as involved in the robbery and arrested. They were charged with eight counts

5

of second degree robbery.[2]  In addition, Calloway was charged with assault with a semi-automatic weapon on victim Morales.  The information alleged that Calloway and Bridges each personally used a firearm in the commission of the offenses other than assault, causing great bodily injury.  It also alleged that Calloway had suffered two prior strike convictions within the meaning of sections 667, subdivisions (b)-(i) and 1170.12, subdivisions (a)-(d).  It was alleged that Bridges had a prior strike conviction for first degree robbery in 2004.

At the first trial, the jury was unable to reach a verdict on any count against Bridges.  Calloway was found guilty of the robberies of Morales, Gilger, and Kuehlthau and the assault on Morales (counts 1, 2, 3, and 5).  The jury found true the allegations that Calloway had personally used a firearm as to those counts, but was unable to reach a verdict on the remaining special allegations or on the remaining charges against him.  A mistrial was declared as to the counts for which no verdict was rendered.  The trial court struck one of Calloway's two prior strike felony convictions in the interests of justice.

At the second trial, the charging pleading was the third amended information.  Bridges was charged with eight counts of second degree robbery (victims Morales, Gilger, Gonzalez, Kuehlthau, Zaldana, Bates, Hilton, and Arteaga).  Calloway was charged with special allegations as to the convictions for robbing Morales, Gilger, and Kuehlthau (counts 1, 3, and 5), as well as the second degree robbery of victims Gonzalez, Zaldana, Bates, Hilton, and Arteaga.  Calloway and Bridges were charged with assault with a semi-automatic weapon on Bates, Hilton, and Arteaga.  In addition, Bridges was charged with assault on Bates, Hilton, Arteaga, Gilger, Morales and Kuehlthau.  Both defendants were found guilty as charged in the second trial.  The jury found true

_____

[2] The victims in these counts were employees Morales, Gilger, Gonzalez, Kuehlthau, Zaldana, Bates, Hilton, Arteaga.  During the first trial, the court granted a defense motion to dismiss count 10, the second degree charge of robbery of another person.

allegations that Calloway had personally used a firearm and firearm allegations against Bridges.[3]

Calloway was sentenced to an aggregate term of 48 years in prison. Bridges was sentenced to an aggregate term of 31 years in prison. We reserve the details of these sentences for our discussion of the sentencing issues raised by appellants. Appellants filed timely appeals.

## DISCUSSION

### I

Bridges challenges the sufficiency of evidence identifying him as the lookout during the robbery, the person referred to during trial as suspect two. He cites the five alibi witnesses who testified that he was home attending a Memorial Day weekend party at the time the robbery occurred.[4] He also cites Calloway's testimony that the accomplice who acted at lookout at the captain's desk was an individual known to him as "Red." Bridges notes that the jury in the first trial was unable to convict him on any charges, splitting eight not guilty to four guilty.

Bridges also points to inconsistencies in the descriptions of suspect two provided by the witnesses. Morales and Kuehlthau identified Bridges as suspect two from six-pack photographs and at trial.

---

[3] On counts 1, 3, 5, 12, 13 and 14 the jury found true allegations under section 12022.5, subd. (a) as to Calloway. It found true allegations under both 12022.53, subdivision (b) and 12022.5, subdivision (a) as to Calloway on counts 4, 6, 7, 8, and 9. On counts 1-9 the jury found not true allegations as to Calloway under section 12022.53, subdivisions (c) and (d). The jury found true allegations under section 12022, subdivision (a)(1) as to Bridges on counts 1 through 9. It found not true an allegation under section 12022.5, subdivision (a) as to Bridges on count 14.

[4] Craig Coleman, Marcia Leatherwood, Elizabeth Franklin, Nin Nanette Grosse, and Katherine Coleman each testified that they saw Bridges return to the party about the time of the robbery at Trader Joe's.

"'In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.]' (*People v. Kraft* (2000) 23 Cal.4th 978, 1053; see also, e.g., *People v. Prieto* (2003) 30 Cal.4th 226, 245; *People v. Farnam* (2002) 28 Cal.4th 107, 142–143.)" (*People v. Mai* (2013) 57 Cal.4th 986, 1038.)

A reviewing court may not set aside a jury's finding of guilt on the question of identity, unless the evidence of identity is "'so weak as to constitute practically no evidence at all.' [Citations.]" (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 521.) Where the circumstances of the eyewitness identification and its weight are explored at trial, and credited by the jury, the jury's determination is binding on the reviewing court. (*Ibid*, citing *In re Gustavo M*. (1989) 214 Cal.App.3d 1485, 1497.) The fact that the robber's face was partially obscured does not preclude a finding of sufficient evidence to support the verdict. (*Id*. at p. 522.) Discrepancies in the eyewitness descriptions, and in the descriptions given of the robber do not require the jury to reject their identifications: "'The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, the uncertainty of recollection, and the qualification of identity and lack of positiveness in testimony are matters which go to the weight of the evidence and the credibility of the witnesses, and are for the observation and consideration, and directed solely to the attention of the jury in the first instance . . . .' [Citation.]" (*Ibid.*)

Kuehlthau identified Calloway and Bridges as the men who came into the captain's desk area when he was there with Gilger. He described Bridges to the police as the lookout, and as tall, wearing a hooded black sweatshirt. After his recollection was refreshed with a police report, Kuehlthau testified that he told the police that the robber he identified as Bridges was a tall black male, with broad shoulders and wearing a black

hooded sweatshirt. Kuehlthau thought Bridges was 6' 4" or 6' 3" (Kuehlthau was 6' 3"). On redirect, he reaffirmed his identification of Calloway (as the man with a gun) and Bridges (lookout). Bridges was 6' 4" tall.

Kuehlthau did not identify any person in the first six pack he was shown because he did not recognize anyone as involved in the robbery. From another six pack, he identified the third photograph, which was of Bridges, on exhibit 6-B as the lookout. He wrote "looks like the lookout who ran off. Similar features, his nose and mouth. He was the other guy who ran in with the guy with the gun, into Trader Joe's who robbed us on May 30th, 2010." Kuehlthau had a good look at Bridges at the time of the robbery. He was certain about the identification. The photo looked "very, very close to whom I saw." He said suspect two (Bridges) was darker skinned than Calloway. Kuehlthau told police officers that he only saw parts of Bridges' face because Bridges had a sweatshirt hood pulled down.

Morales testified that he had a good look at Bridges' face since the store was well lit. He saw suspect two's face for one or two seconds, unobscured by a hoodie sweatshirt. He described suspect two as lighter skinned, with a narrower face, skinnier, and a little taller than Morales, who is 5' 8". He believed that he had agreed with a police officer that suspect two was about 5' 10" tall. When he identified Bridges from a six-pack photo array, Morales said the person looked like suspect two's mouth area and lips. He wrote that the hairline, skin tone, and facial hair looked similar.

Although Gilger did not identify Bridges at trial as suspect two, he testified that he told police officers that suspect two was 6' 3" tall, a couple inches taller than Gilger's 6' 1". This was consistent with Kuehlthau's description of the height of suspect two.[5]

---

[5] Arteaga was not able to identify Bridges prior to the second trial, where she testified that he looked like the second robber who came to the back room and told the third robber "'Let's go.'" Under cross-examination, she testified that she was unsure of her identification, but that Bridges looked like suspect two because he had the same height and complexion.

9

"Inconsistencies in [witnesses'] initial descriptions of the perpetrator . . . are matters affecting the witnesses' credibility, which is for the jury to resolve." (*People v. Elliott* (2012) 53 Cal.4th 535, 586.) In finding Bridges guilty, the jury at the second trial plainly credited the identification testimony of Morales and Kuehlthau and disbelieved the alibi witnesses. Sufficient evidence of identification supports the verdicts as to Bridges.

II

Bridges argues that his convictions of assaulting the victims in the back room (Bates, count 12; Hilton, count 13, and Arteaga, count 14) must be overturned because they were too far from the bullets fired at the captain's desk. Alternatively, he argues that the assault convictions are not supported by evidence that Calloway pointed a gun at these victims when they were moved to the wine room. Calloway joins in all contentions raised by Bridges. Respondent argues that the evidence that a loaded weapon was pointed at the three victims who moved to the wine room is sufficient to support these assault convictions.

When Bates encountered Calloway in the back area of the store, Calloway pulled out a gun and stuck it in his face. Bates jumped back and loudly said, "'Whoa.'". Calloway said, "'Shut the fuck up.'" He kept the gun in Bates' face, and repeated the admonition to shut up. Bates said, "'You can have whatever you want.'" The gun was pointed at Bates' forehead, a couple of inches away.

Arteaga testified that Calloway entered the store, pointed a gun at her, and signaled her to be quiet. Calloway pointed the gun at Arteaga, Bates, and Hilton as he directed them to walk outside the back area of the store to the wine room. He was within two to three feet of them, with the loaded gun pointed at them. Calloway testified that he knew that the gun he used in the robbery was loaded.

"'An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' (§ 240.) Assault requires the willful commission of an act that by its nature will probably and directly result in injury to

10

another (i.e., a battery), and with knowledge of the facts sufficient to establish that the act by its nature will probably and directly result in such injury. (*People v. Williams* (2001) 26 Cal.4th 779, 782 (*Williams*).)" (*People v. Miceli* (2002) 104 Cal.App.4th 256, 268–269.) In *Miceli*, the court found sufficient evidence that the defendant pointed a loaded semi-automatic weapon based on a statement he made to a police officer, despite equivocal testimony by others. If credited by the jury, the defendant's statement was sufficient to prove the gun was loaded. The court concluded: "To point a loaded gun in a threatening manner at another . . . constitutes an assault, because one who does so has the present ability to inflict a violent injury on the other and the act by its nature will probably and directly result in such injury. [Citations.]" (*Id.* at p. 269.)

There was substantial evidence that Bridges aided and abetted Calloway in the commission of his offenses, including the assaults on Bates, Hilton, and Arteaga. Calloway pointed a loaded weapon at these three in a threatening manner. Bridges argues in his reply brief that the convictions should be reversed because the third unidentified robber told the victims in the wine room, "'Don't worry. Nothing bad is going to happen to you.'" This assurance by the third robber does not negate Calloway's use of his weapon in a threatening manner against these victims. The convictions for assaulting Bates, Hilton, and Arteaga are supported by substantial evidence.

III

Both Calloway and Bridges challenge the evidence supporting their convictions at the second trial of robbing Gonzalez and Zaldana, the employees who remained hidden during the robbery.

"'Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211, *People v. Scott* (2009) 45 Cal.4th 743, 749 [(*Scott*)].)" (*People v. McKinnon* (2011) 52 Cal.4th 610, 686-687 [regardless of their specific responsibilities, on-duty employees have constructive possession of their employer's property for purposes of a robbery.].) "Robbery of a particular person has not occurred

11

unless property was taken from the person's immediate presence and the defendant used force or fear to take the property or to prevent the person from resisting." (*Scott*, at p. 749.)

California recognizes that employees in constructive possession of store property may each be a separate victim of a robbery of the business. In *Scott*, during the robbery of a McDonald's restaurant, two employees hid from the robbers. Each saw the robbers with weapons and immediately hid for the duration of the crime. At trial and on appeal, a defendant argued that the hidden employees were not victims of the robbery because they lacked constructive possession of the money which was stolen. Resolving a split of authority in the Courts of Appeal, the Supreme Court held that "'employees working at a business premises were in constructive possession of the employer's property during a robbery, based upon their status as employees and without examining whether their particular duties involved access to or control over the property stolen.'" (*Scott*, *supra*, 45 Cal.4th at p. 752, quoting *People v. Jones* (2000) 82 Cal.App.4th 485, 490.) It concluded that "'if force or fear is applied to two victims in joint possession of property, two convictions of robbery are proper.'" (*Id*. at p. 757.) The convictions for robbing the hidden victims were affirmed. (*Id*. at p. 758.)

Calloway argues there is insufficient evidence that he robbed Gonzalez and Zaldana because they were in different parts of the store when the robbery occurred, did not interact with him or the other robbers, and the robbers were unaware of their presence. "'The generally accepted definition of immediate presence . . . is that "'[a] thing is in the [immediate] presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence *or prevented by fear*, retain his possession of it.'"" (*People v. Hayes* (1990) 52 Cal.3d 577, 626–627.)" (*People v. Abilez* (2007) 41 Cal.4th 472, 507, italics added.) As we have discussed, all employees in the store had constructive possession of the stolen money under the principles announced in *Scott*, *supra*, 45 Cal.4th at page 753. Zaldana and Gonzalez were prevented by fear from retaining possession of the money in the store safe. That is sufficient to satisfy the element of immediate presence to support the

12

convictions of robbing them. (See *People v. Douglas* (1995) 36 Cal.App.4th 1681, 1690-1691 [sufficient evidence of attempted robbery of patron hiding 30 feet from robbery of bartender since patron saw robber had gun, and was prevented by fear from reclaiming money he had left on bar.]

The cases Calloway cites do not support his argument. First, he cites the discussion in *Scott*, *supra*, 45 Cal.4th at pages 750–751 of the general principles of constructive possession for purposes of robbery. As we have discussed, in *Scott*, the Supreme Court upheld convictions for robbing two victims who saw the armed intruders, but hid during the robbery and did not interact with the robbers. (*Id.*, *supra*, 45 Cal.4th at p. 758.) Calloway does not explain how this discussion supports his contention that the robbers had to have knowledge of the victims' presence in order to have robbed them.

Calloway also cites *People v. Bonner* (2000) 80 Cal.App.4th 759, in which the defendant argued there was insufficient evidence to support his conviction of two counts of attempted robbery because he was not in close proximity to either intended victim and did not demand money from either of them. The Court of Appeal rejected the argument and affirmed the convictions. (*Id*. at pp. 765-766.) It concluded the convictions were supported by evidence of the defendant's intent to rob the two victims and of acts beyond mere preparation, including going to the scene with a weapon, placing a mask over his face, and waiting in hiding. He abandoned the plan and fled only after he was discovered by other hotel employees before he could confront the intended victims. (*Id.* at p. 764, fn. 3.) We do not see how this case supports Calloway's argument.

*Sykes v. Superior Court* (1994) 30 Cal.App.4th 479, on which Calloway relies, also is distinguishable. The issue in that case was whether the defendant took a saxophone from the person or immediate presence of a security guard who was not employed by the business which was robbed, but was instead employed by a nearby business. The case is inapposite since here we are concerned with employee victims who come within the principles of constructive possession announced in *Scott*, *supra*, 45 Cal.4th at page 743.

13

Bridges' challenge to the robbery counts involving Zaldana and Gonzalez is similar. He argues that since the robbers did not see these two victims, they never used force against them and thus he cannot be convicted of robbing them. But like the hidden victims in *Scott*, *supra*, 45 Cal.4th 743, Gonzalez and Zaldana both testified that they saw Gilger and Kuehlthau standing at the captain's desk with their hands in the air in the presence of two strangers. They each believed a robbery was occuring and hid. Zaldana testified that he chose the first spot he hid "mainly for safety" because he feared a robbery was occurring. Once he heard the gunfire, he feared for his life. When Gonzalez saw Gilger and Kuehlthau with their hands in the air, he hid because he did not know what was going to happen. He hid so the robbers would not see him. He witnessed Morales and Calloway fighting over the gun from a distance of about 20 feet. When the gunshots were fired, he ducked farther down out of sight of the captain's desk.

There is sufficient evidence that Calloway and Bridges prevented Gonzalez and Zaldana from resisting the robbery by force or fear. (*People v. Abilez*, *supra¸* 41 Cal.4th at p. 507.) The convictions of robbing Gonzalez and Zaldana are supported by sufficient evidence.


IV

Bridges argues the trial court erred by informing the jury prior to voir dire that Calloway had been convicted of four counts in the first trial. He contends the error was prejudicial because "the jury would necessarily think the conviction of a codefendant necessarily implied appellant Bridges was also guilty." Respondent contends that the issue was forfeited because Bridges raised no objection below. Bridges argues the issue affected his substantial rights and therefore may be raised for the first time on appeal. We need not resolve this dispute because we find no error.

After the first trial ended in a mistrial as to Calloway on some of the special gun use allegations on the robbery counts for which he had been convicted, the prosecution chose to recharge those special allegations in the third amended information. As a result, at the second trial, as to Calloway, the jury was required to consider only special

14

allegations as to count 1 (robbery of Morales), count 3 (robbery of Gilger), and count 5 (robbery of Kuehlthau). The prosecution proceeded against Bridges at the second trial on the theories that he was a principal or that he aided and abetted Calloway and the unidentified third robber.

At the beginning of jury selection in the second trial, the court listed the charges against the two defendants, including the special allegations. The court then briefly summarized the case: "Ladies and Gentlemen, this involves several felony counts as I have listed them. All the crimes are alleged to have occurred during a single incident, a take-over robbery of a Trader Joe's in the city of Eagle Rock. [¶] Mr. Calloway has been found guilty of assault with a firearm and three counts of robbery with personal use of a firearm arising out of this case in a prior proceeding. It will be up to you to resolve, if you can, the remaining charges and allegations against Mr. Calloway as well as the charges and allegations against Mr. Bridges." Neither defendant objected to this summary, or to the revelation that Calloway was convicted of some charges in the first trial.

Throughout the second trial, the court and counsel addressed the impact of Calloway's convictions in the first trial. The first question put to Calloway on direct examination by his counsel was whether he previously had been convicted of the robberies of Gilger, Kuehlthau, and Morales. Calloway answered that he had, in addition to a charge of assault with a semi-automatic firearm on Morales. Counsel for Bridges did not request an instruction that would have limited the use of Calloway's convictions at the first trial. In the colloquy over jury instructions, the court and counsel discussed how the verdict forms should be worded since the jury was being asked to decide only the truth of the special allegations as to three counts (1, 3, and 5) on which Calloway was convicted in the first trial. The court noted that the jury was informed of the convictions in the first trial before voir dire began and that the verdict forms would clearly state that the jury was to determine only the truth of the special allegations as to those counts. In addition, counsel for Calloway said he intended to make this clear in his argument. The court suggested the parties agree on the language for the verdict forms.

15

In *People v. Sorrels* (2012) 208 Cal.App.4th 1155 [*Sorrels*], the Court of Appeal acknowledged: "The trial court's reading of a brief overview of the facts before conducting voir dire is commonplace in modern-day trial courts. In fact, judges are encouraged to give such statements to the juries for a number of reasons. First, it serves as a means of giving the jurors an introduction to the case. . . ." (*Id*. at p. 1164.) The *Sorrels* court noted "[i]ndeed, the California Standards for Judicial Administration, Standard 4.30, subdivision (b)(8), direct a criminal trial judge during voir dire to inform the jury of the charges against a defendant, and the section of the Penal Code alleged to have been violated. Most importantly, the standard directs the trial judge to 'describe the offense[s].' Further, the trial judge is to inform the jury that 'the defendant has pleaded not guilty, and the jury will have to decide whether the defendant's guilt has been proved beyond a reasonable doubt.' (*Ibid.*)" (*Ibid.*) In that case, the trial court gave a lengthy factual summary of the crimes. On appeal, the court found no error. It cited *People v. Rodriguez* (1986) 42 Cal.3d 730, 766: "The trial court has sound discretion to summarize the evidence with no limitations on its content or timing so long as it is 'accurate, temperate, nonargumentative, and scrupulously fair.' [Citation.]" (*Sorrels*, *supra*, 208 Cal.App.4th at p. 1165.)

Bridges relies on the general principle that evidence that a codefendant has been convicted of the same crime is extremely prejudicial, citing *People v. Cummings* (1993) 4 Cal.4th 1233, 1322 [*Cummings*], *People v. Leonard* (1983) 34 Cal.3d 183, 188–190, and *People v. Andrews* (1983) 149 Cal.App.3d 358, 364–366). The cases are inapposite. In *Cummings*, evidence of defendant's guilty pleas to a series of robberies was admitted at the trial on separate charges, including murder, against Cummings and his codefendant, Kenneth Gay. The trial court reasoned that the evidence was admissible because it corroborated a witnesses' testimony regarding the remaining charges. The Supreme Court rejected that theory, finding that the attenuated probative value of the prior pleas was outweighed by the prejudicial impact. (4 Cal.4th at p. 1322.) The *Cummings* court also rejected the alternative theory that the plea evidence was admissible because the other witness' credibility was at issue, finding it more prejudicial than

16

probative. (*Ibid.*) In *Cummings*, separate juries were convened to determine the guilt of the two codefendants. (*Id.* at p. 1255.) The Supreme Court's ruling was that the fact Cummings was found guilty based on his plea was not admissible as to Gay. But here, a single jury was convened, which had to determine Calloway's guilt on the special allegations on the charges for which he was previously convicted, additional charges against Calloway, and all charges against Bridges. There is no indication in the record that Bridges sought to sever his trial from Calloway's, or that he sought a separate jury.

*People v. Leonard, supra*, 34 Cal.3d 183, cited by Bridges, also is distinguishable. In that case, Leonard and another person, Johnson, were charged with robbing two victims in a single incident. Johnson pled guilty. At trial, the only charges were against Leonard, but the jury was told of Johnson's guilty plea. The Court of Appeal held that the questionable probative value of the plea was far outweighed by the prejudicial impact. (*Id.* at pp. 188–189.) Unlike the jury in our case, the jury in *Leonard*, was not asked to determine the truth of any special allegations against Johnson. The third case cited by Bridges, *People v. Andrews, supra*, 149 Cal.App.3d 358 is inapposite for similar reasons. In that case, the jury was mistakenly given a newspaper article reporting a codefendant's guilty plea to charges arising from one of the incidents in which Andrews was charged. That jury did not have before it any issue regarding the guilt of the codefendant, unlike the jury here.

We find no abuse of the trial court's discretion in advising the jury of Calloway's convictions in the first trial. That information was necessary in order for the jury to determine the special allegations against Calloway based on those convictions. In addition, the information was relevant in the second trial because Bridges' guilt of the robberies of Gilger, Kuehlthau, and Morales was prosecuted on an aiding and abetting theory.

V

The remaining contentions on appeal concern claims of sentencing error. Calloway argues the trial court erred in denying his motion to dismiss a prior 1987 strike

17

conviction allegation, based on an attempted murder. He also contends the trial court should have stayed the sentence on count 1 from the first trial, the robbery of Morales, under section 654. Bridges argues, and respondent concedes, that Bridges' sentence for robbing Gilger should have been stayed under section 654.

*A. Three Strikes*

The trial court has the discretion under section 1385, subdivision (a) to strike prior conviction allegations brought under the Three Strikes law. (*People v. Leavel* (2012) 203 Cal.App.4th 823, 836 (*Leavel*), citing *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529-530 (*Romero*).) We review the trial court's ruling on such a motion for abuse of discretion. (*Id.* at p. 837) "The burden is on the party challenging the sentence to clearly show the sentence was irrational or arbitrary. [Citation.]" (*Ibid.*) An abuse of discretion is demonstrated only in limited circumstances, for example, when the trial court was unaware of its discretion to dismiss or where it considered impermissible factors in declining to dismiss. (*Ibid*; *People v. Carmony* (2004) 33 Cal.4th 367, 378.) We will not reverse a sentence "merely because reasonable people might disagree. ""An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.""" (*Ibid*, quoting *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978.)

The factors the trial court may consider in ruling on a motion to strike a prior strike conviction allegation are well established: "'[T]he court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' (*People v. Williams* (1998) 17 Cal.4th 148, 161.)" (*Leavel*, *supra*, 203 Cal.App.4th at pp. 836-837.)

Calloway had a sustained juvenile petition for robbery in 1981; a conviction for attempted murder in 1987 for which he was sentenced to seven years in state prison; a 1992 federal conviction for conspiracy to distribute cocaine for which he was sentenced

18

to 25 years in federal prison, and in 2001 he had a conviction for felony sale of narcotics and was sentenced to three years in state prison.[6] The 1987 attempted murder strike allegation was found true by the trial court after the verdicts were returned in the first trial.

Before the start of the second trial, Calloway's counsel filed a motion[7] to strike the allegation of the 1987 attempted murder strike. He argued that Calloway was only 20 years old in 1987, and that his only convictions in the interim were narcotics related. He contended that Calloway chose not to kill or severely injure the victims in the present case, although he had the opportunity to do so. Counsel also referenced a letter written on behalf of Calloway by a jail chaplain, who said he had only written one other such letter in 23 years in that position. Counsel cited Calloway's cooperation in his defense and recognition that he deserved to be punished for his actions. He contended that Calloway's actions were influenced by narcotics. He urged the court to sentence Calloway to a term of 10 years in state prison, arguing that he did not deserve the equivalent of a life sentence.

The prosecutor argued that Calloway did not come within the spirit of *Romero*, *supra*, 13 Cal.4th 497 since "[h]is prior conviction was involving shooting someone in which Mr. Calloway forced someone to grab a gun and forced him to shoot at someone involving drug transactions. And in turn Mr. Calloway shot at that individual." He also emphasized the danger presented when Calloway entered the Trader Joe's with a loaded gun when at least nine employees were present. He argued that danger was demonstrated when Morales was shot in a struggle with Calloway. The prosecutor argued that society would not be safe if Calloway was given a lesser sentence. He contended that Calloway had failed to gain wisdom and judgment from his experiences and asked for the maximum sentence.

---

[6] The court previously struck a second strike allegation of a 1987 conviction for conspiracy to commit murder (§§ 182/187).

[7] This motion is not in the record on appeal.

The trial court noted that it had continued the sentencing hearing for two days in order to carefully review the file so the decision on striking the prior would not be rushed. The court denied the motion. It indicated that since Calloway had engaged in conduct which could easily have resulted in the death of another person, an absolutely clean post-conviction record and extraordinary circumstances would have to be demonstrated to warrant granting the motion. The court emphasized Calloway's history of convictions and repeated returns to criminal conduct after release. The court concluded that the prior prison terms did not convince Calloway to lead a law-abiding life, and stated that it would not show leniency on this record. The court sentenced Calloway to aggregate sentence of 29 years four months on the convictions in the first trial, much less than the sentence requested by the prosecutor.

Calloway characterizes the trial court as having a "pre-disposition to not strik[e] his single stale 'strike' prior felony conviction." He argues the court never genuinely considered granting the motion. He minimizes his criminal conduct between the 1987 attempted murder and the Trader Joe's robbery. He contends that he refrained from committing violence in the current case, failing to acknowledge that Morales suffered a serious gunshot wound to his leg.

We find no abuse of the trial court's discretion in declining to strike the 1987 attempted murder strike allegation. Calloway's criminal history and the violence of the present crime establish him to be a recidivist well within the spirit of the Three Strikes law. He did not refrain from committing crimes despite repeated incarcerations. The trial court recognized its discretion and took into account the relevant factors in the exercise of that discretion. (*People v. Philpot* (2004) 122 Cal.App.4th 893, 907.) Calloway did not rebut the strong presumption that a court acts within its discretion in imposing a sentence under the Three Strikes law. (*In re Large* (2007) 41 Cal.4th 538, 550-551.)

*B. Section 654*

*1. Calloway*

Calloway argues the trial court erred in imposing sentence on both counts 1 and 2 based on the convictions in the first trial. He contends that sentence on count 1 should have been stayed. Both counts involved victim Morales. Count 1 is second degree robbery (§ 211) and count 2 is assault with a semi-automatic weapon (§ 245, subd. (b)). Count 2 was made the base term, for which Calloway was sentenced to the high term of 9 years, doubled to eighteen years in light of the prior strike finding, plus 10 years for the gun use under section 12022.5, subdivision (a), for a total sentence of 28 years on this count. On count 1, the court imposed a sentence of three years, doubled to six years, plus one-third of the sentence (3 years and 4 months) based on the personal use of a firearm (§ 12022.53, subd. (b)), for a total sentence of nine years and four months, to run concurrent to count 2. Calloway contends that these violations arose from an indivisible transaction for which he may receive only one punishment under section 654.

"Section 654, subdivision (a), provides in pertinent part: 'An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.' It has long been held that section 654 bars multiple punishments for separate offenses arising out of a single occurrence where all of the offenses were incident to one objective. [Citations.]" (*People v. Calderon* (2013) 214 Cal.App.4th 656, 661.)

In *People v. Wynn* (2010) 184 Cal.App.4th 1210, 1214, a loss prevention officer at a store observed the defendant shoplifting. She followed him from the store and confronted him in the parking lot, identifying herself. The defendant took a nunchaku from his pants and started swinging it. Several employees eventually subdued him, although one suffered a head injury in the melee. The defendant was convicted of a number of crimes, including burglary and three counts of assault with a deadly weapon. (*Id*. at pp. 1213–1214.) On appeal, he argued that his sentence for burglary, among others, should have been stayed. The Court of Appeal applied the established test to

21

determine whether the offenses were indivisible for purposes of section 654, which turns on the "'defendant's intent and objective, not the temporal proximity of his offenses.'" (*Id*. at pp. 1214–1215, quoting *People v. Harrison* (1989) 48 Cal.3d 321, 335.) "Where the commission of one offense is merely '"a means toward the objective of the commission of the other,"' section 654 prohibits separate punishments for the two offenses. [Citation.]" (*Id*. at p. 1215.)

On appeal, we apply the substantial evidence standard of review to a determination of whether the defendant acted with more than one objective. (*People v. Wynn*, *supra*, 184 Cal.App.4th at p. 1215.) At sentencing after the first trial, the trial court said it did not believe that section 654 applied to the assault with a deadly weapon count. "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective. (*People v. Osband* (1996) 13 Cal.4th 622, 730–731.)" (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)

Calloway argues that the robbery and assault on Morales were committed with the single objective of robbing the Trader Joe's store. He contends that nothing in the record supports the implied finding that he harbored multiple and independent objectives.

We disagree. The Court of Appeal in *People v. Wynn*, *supra*, 184 Cal.App.4th 1210, found substantial evidence that the defendant's objective during the burglary was to obtain cigarettes, but that his objective during the assault was to avoid being arrested for theft. (*Id*. at p. 1216.) Our case is similar. There is substantial evidence that Calloway harbored the intent to rob the Trader Joe's store; he admitted as much in his testimony. But the assault charge arises from his physical altercation with Morales, during which Morales was shot. Like the security guard in *Wynn*, Morales was attempting to apprehend Calloway. There is substantial evidence that Calloway committed the assault as he sought to avoid capture and arrest.

Respondent relies on another similar case, *People v. Watts* (1999) 76 Cal.App.4th 1250, which arose from the armed robbery and assault of restaurant employees late at night. The trial court concluded that the robberies were separate from the assaults and

22

imposed separate punishments for each. (*Id*. at p. 1264.) On appeal, Watts argued that the robberies and assaults were part of a single course of conduct committed with the intent to commit robbery. (*Id*. at pp. 1264–1265.) The appellate court found substantial evidence that each victim was assaulted either as she was attempting to comply with her assailant's demands for money, or was attempting to escape. It concluded that the robberies "were well under way at the time the assaults occurred," and that this evidence supported the conclusion that the assaults were not simply a means of committing the robberies. Substantial evidence supported the trial court's conclusion that the assault of each victim was a separate act with a separate objective, allowing the court to impose separate sentences for each crime. (*Id*. at p. 1265.) Similarly, Calloway shot Morales after the robbery was well underway, after Morales attempted to apprehend him or to prevent the robbery.

We find substantial evidence to support the trial court's implied finding that Calloway entertained independent objectives in robbing and assaulting Morales. We find no error in the imposition of punishment for each count.

*2. Bridges*

The trial court found that section 654 applied to Bridges' convictions for assault as to victims Bates (count 12), Hilton (count 13), Arteaga (count 14), Morales (count 15, and Kuehlthau (count 16), finding Bridges acted with the single objective of committing robbery. But the trial court did not apply the same reasoning to the assault and robbery involving victim Gilger (counts 3 and 11). The trial court selected count 11 (assault on Gilger) as the principal term, imposing a total term of 17 years.[8] On count 3, the robbery of Gilger, the court imposed one-third the midterm of three years, doubled, for a total of two years four months.

Respondent concedes that the trial court should have stayed the sentence on count 3 pursuant to section 654 because of its finding that Bridges engaged in an indivisible

---

[8] The court selected the midterm of six years because Bridges did not personally use a gun, doubled pursuant to the prior strike conviction, plus a consecutive five year enhancement under section 677, subdivision (a).

course of conduct with the objective of robbing the Trader Joe's store. It observes that there is no reason to treat Gilger differently from the other victims in the counts for assault which were stayed. It contends the sentence on count 3, the shorter of the two convictions as to Gilger, should be stayed, and Bridges' sentence reduced by two years, four months.

We agree with the parties that section 654 applies to prohibit punishing Bridges for both the assault and robbery of Gilger. We shall stay the sentence on count 3 and direct the entry of a new judgment reducing Bridges' sentence by two years, four months.


VI

Respondent also asks that we modify the Calloway abstract of judgment to reflect the imposition of a $30 criminal conviction assessment (Gov. Code, § 70373) and a $40 court security fee (§ 1465.8, subd. (a)(1)) for each of the 12 counts for which he was convicted, for totals of $360 and $480 respectively, and that we modify the Bridges abstract of judgment to reflect the imposition of a $30 criminal conviction assessment (Gov. Code, § 70373) and a $40 court security fee (§ 1465.8, subd. (a)(1)) for each of the 14 counts for which he was convicted, for totals of $420 and $560 respectively.

Bridges, joined by Calloway, argues the issue was forfeited or waived by the prosecution's failure to raise it before the trial court. He cites *People v. Tillman* (2000) 22 Cal.4th 300, 302-303 (*Tillman*), which held that the People could not request imposition of restitution and parole revocation fines on appeal because no objection had been raised in the trial court.

In *People v. Smith* (2001) 24 Cal.4th 849, the Supreme Court clarified the *Tillman* holding and concluded that a mandatory fee may be corrected on appeal even if the error was not raised in the trial court. (*Id*. at p. 853.)

Both the criminal conviction assessment and the court security fee are required (*People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1112 [Gov. Code, § 70373]; *People v. Schoeb* (2005) 132 Cal.App.4th 861, 865 [§ 1465.8, subd. (a)(1)]), and therefore may be modified on appeal despite the failure of the People to object at trial.

24

At sentencing, the trial court stated that each defendant was to pay a $30 criminal conviction assessment (Gov. Code, § 70373) and a $40 court operations assessment fee (§ 1465.8). The Bridges abstract of judgment correctly reflects his 14 felony convictions. But the criminal conviction assessment imposed under Government Code section 70373 was $360 rather than the correct figure of $420 (14 times $30). The fee imposed under section 1465.8 was $40 total, rather than the correct figure of $560 (14 times $40). Calloway's abstract of judgment reflects his 12 felony convictions. The criminal conviction assessment is $360, which is correct. The court security fee imposed under section 1465.8 is $200 rather than the correct figure of $480 (12 times $40). We modify the judgments of conviction pursuant to *People v. Smith*, *supra*, 24 Cal.4th at page 853 to reflect the correct amounts.

## DISPOSITION

The judgment of conviction as to Calloway is modified to provide for a court security fee of $480 under section 1465.8. The trial court is directed to amend the Calloway abstract of judgment to reflect this change. As modified, the judgment of conviction as to Calloway is affirmed in all other respects. The sentence imposed on Bridges for count 3 (robbery of Gilger) is stayed and his total sentence reduced accordingly. The Bridges abstract of judgment must be modified to reflect that the sentence on count 3 is stayed and the aggregate sentence reduced, and that a criminal conviction assessment of $420 (Gov. Code, § 70373), and a court security fee of $560

25

(§ 1465.8) are imposed.  The trial court is directed to amend the Bridges abstract of judgment to conform to these changes.  In all other respects, the judgment of conviction as to Bridges is affirmed.  The clerk is directed to forward copies of the correct abstracts of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

SUZUKAWA, J.